(No. 12524.—Judgment affirmed.)
THE PEOPLE OF THE STATE OF ILLINOIS, Defendant in Error, *vs.* WILLIAM DARE, Plaintiff in Error.

*Opinion filed April 15, 1919—Rehearing denied June 5, 1919.*

1. CRIMINAL LAW—*if killing is proved defendant must prove circumstances in justification.* Where a defendant is indicted for murder and the evidence clearly shows that he committed the homicide the burden is upon him to show circumstances in justification of his act, and the weight to be given such evidence is for the jury.

2. SAME—*when instruction that calling foul names will not justify attack is proper.* It is not improper in a murder trial to instruct the jury that calling foul names does not justify an attack, where the defendant, according to his own testimony, had been called foul names by the deceased a few minutes before the fatal encounter, though he did not assault the deceased for that reason.

3. SAME—*certificate of judge is only proper method of showing what took place in his presence.* An assignment of error that the court erred in overruling a peremptory challenge during the examination of the jurors cannot be considered where the bill of exceptions contains no certificate of the judge as to what actually took place, as this is the only way of showing what the judge does or what occurs in his presence.

WRIT OF ERROR to the Circuit Court of Peoria county; the Hon. T. N. GREEN, Judge, presiding.

J. FRANK LASLEY, and SCHOLES & PRATT, for plaintiff in error.

EDWARD J. BRUNDAGE, Attorney General, C. E. Mc-NEMAR, State's Attorney, EDWARD C. FITCH, and GEORGE A. SHURTLEFF, for the People.

Mr. JUSTICE DUNN delivered the opinion of the court:

On August 27, 1917, in the Lehmann building, in Peoria, William Dare stabbed and killed Herman Schwarz. He was indicted for murder and convicted of manslaughter and has sued out a writ of error to reverse the judgment.

The Lehmann building was an office building in process of construction, parts of it having been completed and occupied by tenants. A room in the basement designed as a bar-room had been let and possession had been given to the tenant. The doors were finished in mahogany, and the contractor who was putting in the bar fixtures and wainscoting for the tenant was changing this finish to silver-gray. In this work he employed a young man, Fred Rothan, who was not a member of the Painters' Union, to remove the varnish, using a paint brush and varnish remover. Plaintiff in error was the business agent of the Painters' Union, and on the morning of the homicide went to the building and endeavored to get Rothan to join the union but without success. Schwarz was the foreman of the sub-contractor for the painting and Dare went to an upper floor of the building where he saw Schwarz, and as a result of the interview Rothan quit the work of removing the varnish. Later Rothan returned to work, using a rag instead of a paint brush, and about two o'clock Dare returned to the building and finding Rothan at work went to the fourth floor and had another interview with Schwarz, which resulted, as Dare testified, in his saying to Schwarz, "I gave you this morning until twelve o'clock to get this matter settled, and now at five o'clock, if you don't get this matter adjusted, I will have to take the men off this job." As Dare turned to leave Schwarz said, "I will tend to my business," and Dare replied, "I will fix you." Dare went down to the bar-room and Schwarz immediately followed him, arriving at almost the same time. The elevators in the building go down to the basement. North of and immediately in front of the elevators is a corridor about ten feet wide, running east and west. At the east side of the elevators a stairway leads up from the basement, and a little further to the east, at the end of the corridor, is a door leading into the bar-room. At the west end of the corridor is a door leading into a pool-room, and a stairway by the side

of this door leads to the sidewalk on the street. The bar-room and pool-room lie north of the north wall of the corridor and are separated by a partition extending north from the north wall of the corridor, in which, at some distance from the south end, is a door between the two rooms. There were window openings in the wall between the corridor and the bar-room but at the time of the homicide the windows were not hung. Schwarz and Dare met in the bar-room and a quarrel occurred between them. J. W. Elmore, the business agent of the Carpenters' Union, and Frank Dougherty, were present and were with Dare and Schwarz at the time and others were in the room. Elmore testified that the first remark he heard was, "I am running this business," made by Schwarz, to which Dare replied, "I am taking care of my part of the business, too." Then Dare hit Schwarz in the face with his fist. Schwarz went through the door into the pool-room and returned with an iron bar raised above his head, going toward Dare, but he was stopped by those present, who took the bar away from him, and Schwarz then said, "I will prefer charges against you." Dare testified that he struck Schwarz because of the foul and obscene names which Schwarz applied to him, and one of the witnesses testified to the use of such words but the other witnesses did not hear any such language. After the iron bar was taken from him Schwarz left the bar-room through the door leading into the pool-room and went around through the pool-room to the door at the west end of the corridor, through which he entered the corridor about the same time that Dare came into the corridor at the other end from the door leading into the bar-room. Schwarz went east toward the stairway leading to the upper floor and Dare went west toward the stairway leading to Main street. Two janitors were at work in the corridor baling paper. They saw Schwarz come into the corridor but saw nothing in his hand. They went on with their work. There was a short scuffle which they heard

but did not see. They turned and saw Schwarz backing away from Dare and facing west, with his hands to his side, and heard him say, "My God! That man has got a knife and cut me!" He backed through the door into the bar-room and fell, saying, "See the man with the knife in his hand! He stabbed and killed me!" A witness testified that Dare was standing in the corridor with his hat off and the knife in his right hand. The weapon called a knife was a long, slender paper knife used for opening letters, which Dare was carrying in his inside coat pocket. It was found after the accident lying on the floor, with blood on it. Charles W. Keys, a painter, testified that a short time before Dare had shown him a knife similar to the one in evidence, saying that he was "fixed for the next [using an opprobrious term] that jumps me." Schwarz was carried to a physician's office on the tenth floor of the building, where he died in a few minutes.

Dare testified that after he had taken two or three steps down the corridor Schwarz made a jump toward him, calling him by a foul name, and grabbed him and commenced pressing him back over a crate that was there, with his head against the wall; that Dare felt the knife in his pocket prick his arm and presumed that he got it; that he had no intention of killing Schwarz; that it didn't enter his mind; that he thought Schwarz had a brick in his hand and he was afraid of him; that Schwarz backed him, pushed him over, twisting him around until he was facing the other way and went away from him over to the door, and when he got in the door faced him, saying, "See! He has got a knife!" that then Schwarz turned and walked into the door and Dare turned and walked outside.

There was evidence as to Dare's actions and statements to the policeman when he was arrested and when he was in the office of the chief of police, but they are not essential to be referred to here.

The plaintiff in error argues that the verdict was clearly against the weight of the evidence; that he was not guilty of manslaughter, but the case was one either of willful murder or self-defense. If it was a case of willful murder plaintiff in error cannot complain that he was found guilty only of manslaughter, so that part of the argument may be disregarded. The court will interfere with a verdict of guilty only where there is clearly a reasonable and well founded doubt of the defendant's guilt. Whether the circumstances are such as to raise such reasonable doubt it is the special province of the jury to determine. It was clearly shown that Dare killed Schwarz, and the burden therefore devolved upon him to show circumstances that mitigated the act or justified or excused it. Even if his account of the homicide, if true, might have excused him, yet the credit to be given to his account was for the jury to determine under all the facts and circumstances in the case, and their verdict cannot be set aside because not sustained by the evidence.

Objections are made to various instructions given to the jury. It is claimed that instruction No. 20 was misleading because it instructs the jury that mere words or names would not justify an assault, while it was not claimed that the plaintiff in error attacked the deceased in the corridor because of being called names by the deceased. The plaintiff in error, according to his testimony, had been called foul names by the deceased a few minutes before they met in the corridor, and it was not improper to tell the jury that this fact would not justify an attack on the deceased. The objection that the instruction ignores the theory of the defense is not valid, for it contains the condition that before a verdict of guilty can be rendered it must appear that the action of the defendant was not in self-defense.

Instruction No. 21 is based upon the hypothesis that the first trouble between Schwarz and Dare was over and that Dare made a new attack upon Schwarz, and objection

is made that it does not take into consideration that Dare claimed that Schwarz made the second attack on him. But the objection is not well founded, for the instruction contains the express requirement that the jury believe from the evidence, beyond all reasonable doubt, that Dare without any further provocation made an attack upon Schwarz with intent to kill him.

It is argued that there was no evidence on which to base instruction No. 22, in so far as it submitted to the jury whether Dare armed himself with the paper knife with intent to use it on Schwarz, and that the evidence clearly shows there was no such intent. The instruction was justified by the testimony of Keys that Dare exhibited the weapon, saying he was "fixed" for the next one that jumped him, by Dare's own statement that he told Schwarz he would "fix" him, and by the testimony of another witness that immediately after striking Schwarz in the barroom Dare had his hand on his inside coat pocket, where the knife was. This answers also the substantially similar objection made to instruction No. 23.

A general objection is made to instruction No. 24 that it is misleading, confusing and prejudicial and sets out certain facts which were not in evidence. Our attention is not called to any special thing in the instruction to which this criticism applies, and though a part of it, because of an apparent omission of some words, is insensible, it contains nothing by which the jury could have been misled or the plaintiff in error prejudiced.

Included among the reasons for a new trial was one that the court erred in overruling the peremptory challenge of the defendant to the juror Zeigler although the defendant had still six unused peremptory challenges. In support of this reason the plaintiff in error presented the affidavits of himself and his attorneys as to what took place during the examination of the jurors while the jury was being empaneled. Affidavits in opposition were filed by the State's

attorney and his assistants. The bill of exceptions contains no certificate of the judge as to what actually did take place, and this is the only way of showing what the judge does or what occurs in his presence. (*People* v. *Capello*, 282 Ill. 542.) This assignment of error, therefore, cannot be considered.

The judgment will be affirmed.    *Judgment affirmed.*